UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.           ) | Dkt. No. 1:18-CR-10358-1 |
| ) | |
| PHILIP LEO CAMPANIRIO   ) | |

**DEFENDANT PHILIP LEO CAMPANIRIO'S MOTION FOR A NON-GUIDELINE SENTENCE UNDER *BOOKER* AND SENTENCING MEMORANDUM**

In accordance with the Procedural Order issued by the Court on January 8, 2019, the defendant, through counsel, files this **Motion for a Non-Guidelines Sentence under *Booker*** and **Sentencing Memorandum** in support thereof.

**Summary Argument**

The probation officer has completed a Presentence Investigation Report (PSR) in which he recommends an advisory guideline range (AGR) of 57 to 71 months.[1]  The defendant does not object to this recommended finding.  The defendant contends, however, that there are good and sufficient grounds under *Booker*[2] for the Court to consider imposition of a sentence below the recommended AGR.  In the first instance, there are case specific factors under the rubric of the "nature and circumstances of the offense."  These include the facts that no one was threatened, no one was injured, and no weapon was present in any manner or form during the commission of the offense.  Beyond that, the defendant pleaded guilty in a timely manner, thereby saving scarce prosecutorial and judicial resources.  In the second instance, there are compelling factors under the rubric of the "history and characteristics of the defendant."  The first is the defendant's longstanding and persistent substance abuse history which underlies the instant matter and

---

[1] PSR, ¶ 119.
[2] *U.S. v. Booker,* 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 621 (2005).

almost every one of his criminal history entries. The second are the wide-ranging effects of a head-on automobile collision he was involved in at the age of 26. The immediate effect was a stroke which left him with partial body paralysis. The long-term effects have been both physical and mental/emotional in nature and continue to this day. The defendant believes that when the Court takes these factors fully into consideration in light of the statutory purposes of sentencing, it will conclude that a sentence within the AGR would be greater than necessary to achieve a just disposition of this case. Instead, the defendant urges the Court to impose a non-Guidelines sentence under *Booker* of 48 months' imprisonment, restitution, and a three-year term of supervised release with appropriate special conditions.

## Nature and Circumstances of the Offense

Robbery of a financial institution in any form is a serious offense. Several facts, garnered from ¶ 8 of the PSR, distinguish this case, however, from the usual bank robbery. In the first instance, the bank teller was not threatened. Second, no one was injured. Third, there was no presence or use of a weapon of any kind. The defendant simply demanded money from the teller, telling her not to include any die-packs, and exited the premises once he was given the money. Thereafter, the defendant pleaded guilty early to the offense, thereby saving scarce prosecutorial and judicial resources.

Even more important than the foregoing, the defendant has accepted full responsibility for his actions, saying that he is ashamed for what he has done and has "great remorse and regret." This is expressed in his letter to the Court dated February 20, 2019 which is appended. He adds further that he has come to realize the "seriousness of the disease of addiction" which has afflicted him from his early years. Prior to the offense, he had taken positive steps while on supervised release, including participating in therapy, having gainful employment despite his disability, obtaining his driver's license, purchasing a car, and living in safe and suitable housing.

Now he knows that overcoming his addiction must be his first priority. This is the reason that he hopes the Court will recommend participation in the 500-Hour Residential Drug Abuse Program (RDAP) while in the Bureau of Prisons (BOP).

### History and Characteristics of the Defendant

Unlike many of the defendants who appear before the Court, the defendant had the benefit of a good upbringing. He was raised in a two-parent home of upper middle class means, the defendant's father having always been self-employed. He enjoyed generally good relationships with his parents and siblings. (A letter from Barri Maltais, the defendant's sister, is appended for the Court's consideration.) The defendant never experienced physical, mental, or sexual abuse, and the home was free of domestic violence or substance abuse. (PSR, ¶ 67).

Notwithstanding his favorable upbringing, the defendant developed a serious substance abuse addiction in his early twenties which has afflicted him ever since. It began with alcohol consumption (PSR, ¶ 100) which grew to include powder cocaine and subsequently crack cocaine, the latter of which the defendant once characterized as the "catalyst to [his] demise." (PSR, ¶ 102). His substance abuse is behind almost all of the entries of his long criminal history. The defendant has participated in a number of treatment programs over the years and has had a number of periods of sobriety; inevitably, however, he always returned to drugs. (PSR, ¶¶ 106 – 107). The defendant now knows that he must seriously address his substance abuse.

A key event in the defendant's life, not unrelated to his substance abuse, was his involvement in a head-on automobile collision at the age of 26 during which he sustained a carotid artery dissection which led to a massive stroke to the right side of the defendant's brain and neurological damage. The physical repercussions have included partial paralysis and weakness on the entire left side of his body requiring the use of a leg brace. For a period of time, he also suffered from grand mal seizures until these were controlled with medication. (PSR, ¶¶

3

78 – 83). Mentally and emotionally, the repercussions of the accident have been most prominently in his short-term memory and alternating mood swings between extreme highs and lows. Moreover, as is reflected in the various diagnoses by medical professionals over the years, the damage to the frontal lobe of the defendant's brain often leads to impulsive behavior and poor judgment, and the damage to the temporal lobe of his brain often leads to mood instability, all of which the defendant has experienced. (PSR, ¶¶ 87 – 97). This is a classic and unfortunate example of the long-term impact a key event early in one's years can have over a lifetime.

**Analysis in Light of 18 U.S.C. § 3553(a)(2)(A-D) Sentencing Purposes**

Before imposing sentence, the Court is obligated to address the sentencing purposes recounted in 18 U.S.C. § 3553(a)(2)(A-D). An analysis of this case in light of those purposes follows.

*(A) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.*

The offense before the Court is serious and is reflected in the AGR of 57 to 71 months. This notwithstanding, there are mitigating considerations which together, in the defendant's view, suggest imposition of a lower sentence. One is the fact that it was about as non-violent as a technically violent offense can be. The defendant has accepted responsibility and entered a guilty plea early. Another is the defendant's longstanding substance abuse which has been exacerbated by the physical and mental/emotional repercussions of an automobile accident the defendant was involved in more than 25 years ago. Finally, the defendant is committed to firmly addressing his substance abuse problem.

*(B) To afford adequate deterrence to criminal conduct.*

Any sentence of imprisonment within the AGR or even slightly below it will deter others from similar conduct.

*(C) To protect the public from further crimes of the defendant.*

When the defendant returns to the community, he will have (hopefully) completed RDAP in BOP, will have a substance abuse and mental health aftercare special conditions in place, and will be under the active supervision of the U.S. Probation Office. This should assure reasonable protection of the public.

*(D) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.*

The defendant's greatest need is to overcome his substance abuse. He is committed to doing so and to actively participating in RDAP if made available to him and in the substance abuse aftercare special condition of supervision. He could also benefit from mental health therapy.

**Recommendation**

For all of the reasons advanced in this memorandum, the defendant believes that a sentence within the AGR of 57 to 71 months would be greater than necessary to meet the statutory purposes of sentencing. Sufficient but not greater than necessary to meet said purposes would, in the defendant's opinion, be a sentence under *Booker* of 48 months' imprisonment. Accordingly, the defendant respectfully requests that the Court consider imposition of the following sentence:

> A term of imprisonment of 48 months;
> A judicial recommendation to BOP that the defendant participate in RDAP;
> A term of supervised release of three years, including imposition of the five special conditions suggested by the probation officer;
> Full restitution;
> No fine due to inability to pay same;
> A special assessment of $100.

Respectfully Submitted
Philip Campanirio
By his Attorney,

Date: April 2, 2019  /s/ Paul J. Garrity
Paul J. Garrity
14 Londonderry Road
Londonderry, NH 03053
(603) 434-4106

## CERTIFICATION OF SERVICE

I, Paul J. Garrity, hereby certify that on this 2nd day in April, 2019, a copy of the within motion was e-filed for all parties involved.

/s/ Paul J. Garrity
Paul J. Garrity